UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN McMILLAN,

                                    Plaintiff,

            v.

ADA PEREZ; SUSAN TAEDGER;
JOANNE MANY; and EARL HUGHES,

                                    Defendants.

No. 14-CV-3854 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances:</u>

Steven McMillan
Fishkill, NY
*Pro Se Plaintiff*

Neil Shevlin, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Steven McMillan ("Plaintiff"), proceeding pro se, brings this Amended Complaint,

pursuant to 42 U.S.C. § 1983, against Ada Perez ("Perez"), Susan Taedger ("Taedger"), Joanne

Many ("Many"), and Earl Hughes ("Hughes") (collectively, "Defendants"), alleging Defendants

violated his constitutional rights in holding him in custody beyond the date when he should have

been released to parole supervision.  (Dkt. No. 8.)  Before the Court is Defendants' Motion To

Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

("Motion").  (Dkt. No. 32.)  For the following reasons, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion.[1]  For additional context, the Court looks to the Uniform Sentence and Commitment and the Memorandum from the New York State Department of Corrections and Community Supervision ("DOCCS"), submitted together with Defendants' Motion.  (*See* Decl. of Neil Shevlin, Esq. in Supp. of Mot. ("Shevlin Decl.") Ex. A (Dkt. No. 34); Shevlin Decl. Ex. B.)[2]

On or about May 3, 2012, Plaintiff was sentenced by the Supreme Court for New York County to a period of incarceration of two-to-four years.  (Am. Compl. 4 (Dkt. No. 8); *see also* Shevlin Decl. Ex. A.)[3]  The sentencing court directed that Plaintiff's sentence be executed as a parole supervision sentence, (Shevlin Decl. Ex. A; *see also* Am. Compl. 4), and that, as an

---

[1] For ease of reference given Plaintiff's use of a standard complaint form with additional pages attached, the Court cites to the ECF-generated page numbers stamped at the top of Plaintiff's Amended Complaint.

[2] At the heart of Plaintiff's allegations are his May 2012 criminal sentence and referral to the Willard Drug Program ("Willard").  The Uniform Sentence & Commitment, dated May 8, 2012, evidences that sentence, (Shevlin Decl. Ex. A), and the DOCCS Memorandum, signed by Plaintiff on June 29, 2012, indicates Plaintiff's eligibility for a 90-day drug treatment program and acceptance of an alternative to Willard, (Shevlin Decl. Ex. B).  Thus, the documents are integral to the Amended Complaint and may be properly considered by this Court in resolving the instant Motion.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).

[3] The Amended Complaint alleges that Plaintiff received a sentence of two-to-four years, (*see* Am. Compl. 4), but the Uniform Sentence and Commitment indicates he received a sentence of one-and-one-half-to-three years, (*see* Shevlin. Decl. Ex. A).  To avoid confusion on an issue immaterial to addressing the merits of the instant Motion, this Court adopts Plaintiff's allegation that he received a sentence of two-to-four years.

alternative to incarceration, Plaintiff be transferred to the Willard Drug Program ("Willard") to complete its 90-day treatment program, (Am. Compl. 4; *see also* Shevlin Decl. Ex. B).

In "mid-May of 2012," Plaintiff was transferred from Rikers Island to Downstate Correctional Facility ("Downstate"). (Am. Compl. 4.) He thereafter met with Taedger, his assigned counselor, "who insisted [Plaintiff] was sentenced to a [two-]to[-four] year prison term (only)." (*Id.*) Without investigation, she asserted that Plaintiff's paperwork did not mention referral to Willard. (*Id.*)

Also in May 2012, Plaintiff was interviewed by a psychologist at Downstate, to whom he explained that he should have been transferred to the drug treatment program within 10 days. (*Id.*) The "[p]sychologist called [the] counselors' department" to inquire about the transfer and was told, "something to the effect of, 'we told [Plaintiff] he is not sentenced to Willard. We hope he is taking his medications; it sounds like he is hallucinating.'" (*Id.*)

In June 2012, Plaintiff filed a grievance complaining that Downstate had not transferred him to Willard "because of an error in the records that they will not correct." (*Id.*; *see also id.* at 8.) Plaintiff requested that Downstate review his sentence and commitment papers as well as the sentencing minutes, and provide him with a copy of all paperwork. (*Id.* at 4.) Later that same month, Plaintiff met with Hughes, the grievance coordinator, who "represent[ed] that the matter would be investigated thoroughly." (*Id.* at 4–5.) Hughes subsequently informed Plaintiff that he had investigated the grievance and determined that "Downstate's records show that [Plaintiff] was sentenced to a [two-]to[-four] year prison term (only)." (*Id.* at 5.)

Plaintiff requested a copy of the grievance and sentencing papers from Hughes, who "represented that all documents would be forwarded to [Plaintiff]." (*Id.*) Plaintiff never received the paperwork. (*Id.*) Plaintiff then wrote to Hughes to appeal his grievance, but Hughes never

responded to his letters.  (*Id.*)  Plaintiff also wrote to Perez requesting investigation of the matter, but he never received a response to this letter.  (*Id.*)[4]

"On or about July 1, 2012, [Plaintiff] contacted his [a]ttorney, Kevin Morgan," ("Morgan") to "inform[] him of the discrepancy."  (*Id.*)  "Morgan stated he would contact Downstate to correct the problem."  (*Id.*)  Subsequently, Many, the supervisor for counselors at Downstate, apologized to Plaintiff, telling him that "'we at Downstate blew it; you were sentenced to Willard.  It was on the sentence of commitment paper, we missed it—it was right in front of our faces the whole time.  You should have been transferred to Willard in 10 days; we're sorry.'"  (*Id.* at 5–6.)

"[O]n or about July 5, 2012, [Plaintiff] was transferred" to a 90-day drug treatment program at Midstate Correctional Facility ("Midstate"), rather than Willard, because Midstate had the resources necessary to address Plaintiff's mental health issues.  (*Id.* at 6; *see also* Shevlin Decl. Ex. B.)

B.  Procedural Background

Plaintiff commenced the instant Action on May 6, 2014.  (Dkt. No. 2.)  On September 25, 2014, Plaintiff filed his Amended Complaint against Defendants.  (Dkt. No. 8.)  By letter dated July 3, 2015, Defendants informed the Court that Plaintiff had absconded from parole supervision on May 18, 2015 and requested that the Court issue an Order to Show Cause,

---

[4] Though the Amended Complaint alleges that Plaintiff wrote to the "Warden at Downstate" and uses a male pronoun, (*see* Am. Compl. 5 ("[Plaintiff] wrote [the] Warden at Downstate requesting him to investigate [the] matter.")), the Court, with "the special solicitude that is appropriately accorded to pro se litigants," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (italics and internal quotation marks omitted), assumes this allegation to refer to Perez, (*see* Am. Compl. 1 (naming Perez as a defendant); Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Opp'n") at unnumbered 7 (Dkt. No. 39) (alleging that Perez does not "answer letters," "respon[d] to grievances[,] or assist in . . . investigation[s]")).

demanding that Plaintiff respond and demonstrate within 14 days why this case should not be dismissed in light of his violation of parole supervision.  (Dkt. No. 16.)  On July 6, 2015, the Court issued such an order, but on the alternative ground that Plaintiff failed to keep the Court apprised of his current address.  (Dkt. No. 17.)  Plaintiff subsequently notified the Court of his new address.  (Dkt. No. 20.)

With the Court's leave, (*see* Dkt. No. 29), Defendants filed their Motion and supporting papers on November 9, 2015, (Dkt. Nos. 32–34).  Plaintiff submitted his opposition on February 5, 2016, (Dkt. No. 39), and Defendants submitted their reply on February 17, 2016, (Dkt. No. 43).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-

technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a

plaintiff armed with nothing more than conclusions.").

   "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.

Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F.

Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

   Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his] [complaint]

liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of

Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

B.  Analysis

Under New York Criminal Procedure Law § 410.91, an inmate who has been referred to a drug treatment program shall be transferred to state custody where he shall remain for a period "not to exceed [10] days" before being transferred to the drug program.  (*See* Am. Compl. 7.)[5] Plaintiff alleges that Defendants improperly held him in custody for 50 days past the date when he should have been transferred to the drug treatment program.  (*Id.* at 6.)[6]

---

[5] Under New York law, "if the court directs that the sentence be executed as a sentence of parole supervision, it shall remand the defendant for immediate delivery to a reception center . . . for a period not to exceed [10] days."  N.Y. Crim. Proc. Law § 410.91(1).

[6] Though Plaintiff initially couches his claims as involving deliberate indifference, (*see* Am. Compl. 6 (alleging "Downstate's [d]eliberate [i]ndifference toward [Plaintiff]"); *but see* Pl.'s Opp'n at unnumbered 4–5 (addressing Plaintiff's claims in the context of the Fourteenth Amendment)), the Court, in "interpret[ing] [the Amended Complaint] to raise the strongest arguments that [it] suggest[s]," *Sykes*, 723 F.3d at 403 (internal quotation marks omitted), analyzes his allegations in the context of the Due Process Clause, *see, e.g.*, *Buitrago v. City of N.Y.*, No. 11-CV-8551, 2012 WL 6621688, at *6 (S.D.N.Y. Dec. 19, 2012) (analyzing a prisoner's complaint of "'unjustifiable' delay in transferring him to State custody" in the context of the Due Process Clause (alteration omitted)); *Andujar v. Fischer*, No. 09-CV-489, 2010 WL 786298, at *2 (N.D.N.Y. Mar. 2, 2010) (analyzing an alleged "violation of the time for transfer prescribed in New York State Criminal Procedure Law" in the context of the Due Process Clause).

To the extent the Amended Complaint raises a claim for inadequate processing of his grievances, (*see* Am. Compl. 6 (alleging that Defendants "deliberately disregarded [Plaintiff's] letters, grievance (which was never filed), and oral complaints")), such a claim would fail as a matter of law.  The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances.  *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983).  However, because inmate grievance procedures created by state law are not required by the Constitution, "allegations that prison officials

1.  Due Process

Defendants argue that the Amended Complaint fails to state a constitutional violation because Plaintiff has no federally protected liberty interest in early release to parole supervision. (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 5–8 (Dkt. No. 33).)  "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."  *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012).  The statute itself "creates no substantive rights," but merely provides a procedure for redress for the "deprivation[] of rights established elsewhere."  *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *see also Louis v. Metro. Transit Auth.*, 145 F. Supp. 3d 215, 223 (E.D.N.Y. 2015) (same).  Thus, in order to state a claim pursuant to § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (internal quotation marks omitted).

---

violated those procedures do[] not give rise to a cognizable § 1983 claim."  *Shabazz v. Dzurenda*, No. 16-CV-62, 2016 WL 4203395, at *4 (D. Conn. Aug. 9, 2016) (internal quotation marks omitted).  Where "prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim."  *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 360 (N.D.N.Y. 2010) (internal quotation marks omitted).  Accordingly, "the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983."  *Id.* (internal quotation marks omitted); *see also Harris v. Westchester Cty. Dep't of Corr.*, No. 06-CV-2011, 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) (holding that the "plaintiff[']s claim regarding [the] defendants' allegedly negligent mishandling of grievances cannot, as a matter of law, support a claim under [§] 1983").  Moreover, any claim that Plaintiff was deprived of his right to petition the government for redress is belied by the fact of the filing of this Action.  *Cf. Harris*, 2008 WL 953616, at *5 ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by [the] plaintiff here:  directly petitioning the government for redress of his claims.").

Pursuant to the Due Process Clause of the Fourteenth Amendment, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (holding that a procedural due process violation arises under the Fourteenth Amendment when a plaintiff has been deprived of a constitutionally protected interest in life, liberty, or property without due process of law). The Due Process Clause protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *see also Zherka v. Ryan*, 52 F. Supp. 3d 571, 582 (S.D.N.Y. 2014) (same). To state a procedural due process claim, a plaintiff "must first establish that he enjoyed a protected liberty interest." *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998). It is well settled that an inmate has no constitutionally protected interest in parole, or other conditional release from prison, prior to the expiration of a valid sentence. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). Additionally, the Second Circuit has concluded that inmates have "no constitutional right to discretionary good time release, or to participation in prison programs which might expedite release." *Fifield v. Eaton*, 669 F. Supp. 2d 294, 297 (W.D.N.Y. 2009) (citing, inter alia, *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000); *Johnson v. Baker*, 108 F.3d 10, 11 (2d Cir. 1997)).

In this case, Plaintiff alleges that Defendants' actions in failing to transfer him to Willard within the 10-day statutory mandate extended his incarceration in violation of N.Y. Crim. Proc. Law § 410.91. (*See* Am. Compl. 6–7.) This allegation, however, fails to plead a due process violation, as "the failure of prison authorities to timely transfer an inmate to a drug treatment program does not state a redressable constitutional claim." *Cofield v. Lempke*, No. 10-CV-284, 2011 WL 2881951, at *5 (W.D.N.Y. July 15, 2011); *cf. Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (holding that "state statutes do not create federally protected due process

entitlements to specific state-mandated procedures"); *Barna v. Travis*, 239 F.3d 169, 171 (2d Cir. 2001) (per curiam) ("The New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release . . . .  Accordingly, [prisoners] have no liberty interest in parole, and the protections of the Due Process Clause are inapplicable."); *Watson v. City of N.Y.*, 92 F.3d 31, 37–38 (2d Cir. 1996) ("Ample precedent establishes that a state rule of criminal procedure . . . does not create a liberty interest that is entitled to protection under the federal Constitution.").  Indeed, "courts in this [C]ircuit have explicitly held that a delay in transferring prisoners to Willard does not state a federal due process claim." *Buitrago v. City of N.Y.*, No. 11-CV-8551, 2012 WL 6621688, at *7 (S.D.N.Y. Dec. 19, 2012) (citing *Cofield*, 2011 WL 2881951; *Andujar v. Fischer*, No. 09-CV-489, 2010 WL 786298 (N.D.N.Y. Mar. 2, 2010)).[7]

Plaintiff received a sentence of two-to-four years, (*see* Am. Compl. 4), and the referral to a drug treatment program neither changed that sentence nor created a protected liberty interest in early release, notwithstanding the mandatory language of § 410.91, *cf. Pugliese v. Nelson*, 617 F.2d 916, 924 (2d Cir. 1980) ("Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements.'" (internal quotation marks omitted)).  The time he spent at Downstate before his transfer was pursuant to a

---

[7] In his opposition papers, Plaintiff argues that *Andjuar*, *Cofield*, and *Buitrago* are inapposite given the factual distinctions between those cases and the present Action.  (*See* Pl.'s Opp'n at unnumbered 5.)  All three decisions, however, set forth general legal principles rather than holdings limited to the specific facts presented by the individual plaintiffs.  *See Buitrago*, 2012 WL 6621688, at *6 (finding that the delay in transferring the plaintiff to a drug treatment program "failed to state a due process violation, under the governing law"); *Cofield*, 2011 WL 2881951, at *5 ("[T]he authority in this Circuit holds that the failure of prison authorities to timely transfer an inmate to a drug treatment program does not state a redressable constitutional claim."); *Andujar*, 2010 WL 786298, at *3 (finding no due process deprivation based on the "defendants' actions in failing to transfer [the plaintiff] to Willard within the [10-]day statutory mandate").

valid sentence, and that 60-day period of incarceration, therefore, was not unconstitutional. Because Plaintiff has not demonstrated a violation of any liberty interest protected by the Due Process Clause, Defendants are entitled to dismissal.

### 2.  Qualified Immunity

In the alternative, Defendants contend that the Amended Complaint should be dismissed on qualified immunity grounds.  (*See* Defs.' Mem. 11–13.)  The doctrine of qualified immunity generally shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).  This protection attaches "only if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Coggins v. Buonora*, 776 F.3d 108, 114 (2d Cir. 2015) (internal quotation marks omitted).  In this context, a court "is guided by two questions:  first, whether the facts show that the defendants' conduct violated [the] plaintiffs' constitutional rights, and second, whether the right was clearly established at the time of the defendants' actions." *Golodner v. Berliner*, 770 F.3d 196, 201 (2d Cir. 2014) (alterations and internal quotation marks omitted).

Here, the second prong of the inquiry need not be reached because, as discussed above, Plaintiff has not plausibly pled that Defendants violated his constitutional rights.  *See Posr v. City of N.Y.*, No. 10-CV-2551, 2013 WL 2419142, at *10 (S.D.N.Y. June 4, 2013) ("Because [the defendant] did not violate [the] [p]aintiff's Fourth Amendment rights, there is no need to consider if [the defendant] is entitled to qualified immunity."), *aff'd sub nom. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014).  Nevertheless, even assuming Plaintiff's rights

were violated by his detention at Downstate for 60 days, qualified immunity would still shield Defendants from suit.[8]  Neither the Supreme Court nor the Second Circuit has held that the Fourteenth Amendment guarantee of freedom from incarceration without due process includes the right to early release prior to the expiration of an individual's sentence.  *See, e.g.*, *Greenholtz*, 442 U.S. at 7; *Abed*, 209 F.3d at 66–67; *Pugliese*, 617 F.2d at 923–24.  Indeed, as discussed above, district courts in the Second Circuit have indicated the opposite.  *See Buitrago*, 2012 WL 6621688, at *6–8; *Cofield*, 2011 WL 2881951, at *4–5; *Andujar*, 2010 WL 786298, at *2–3; *see also Brown v. Fischer*, No. 10-CV-3830, 2011 WL 4056302, at *5 (S.D.N.Y. Aug. 17, 2011) (explaining that "prisoners do not have an enforceable right to gain entry to work release programs"), *adopted by* 2011 WL 4069663 (S.D.N.Y. Sept. 12, 2011); *Harrison v. Fischer*, No. 08-CV-1327, 2010 WL 2653629, at *7 (N.D.N.Y. June 7, 2010) (noting that prisoners lack a constitutionally protected liberty interest in eligibility for rehabilitative programs), *adopted by* 2010 WL 2653477 (N.D.N.Y. June 29, 2010); *Hickerson v. Willingham*, No. 06-CV-777, 2006 WL 3422186, at *3 (D. Conn. Nov. 28, 2006) (finding that a prisoner had no liberty interest in obtaining a one-year sentence reduction for completion of a residential drug abuse treatment program).  Thus, it cannot be said that any right to timely transfer to a drug treatment program was clearly established at the time.  Accordingly, Defendants are entitled to dismissal on this independent ground as well.

---

[8] It bears noting that "[a] violation of state law neither gives [a plaintiff] a § 1983 claim nor deprives [the] defendants of the defense of qualified immunity to a proper § 1983 claim." *Doe v. Conn. Dep't. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) (internal quotation marks omitted).

III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion without prejudice. Should Plaintiff choose to file an amended complaint, he must do so within 30 days of this Order, addressing the deficiencies outlined herein.[9] He is advised that an amended complaint replaces the Amended Complaint currently pending before the Court in its entirety and therefore must include all of his claims and factual allegations against all Defendants against whom he wishes to proceed. The amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this Order.

The Clerk of Court is requested to terminate the pending Motion. (Dkt. No. 32.)

SO ORDERED.

DATED:      September 14, 2016
            White Plains, New York

            KENNETH M. KARAS
            UNITED STATES DISTRICT JUDGE

---

[9] In addition, the Court notes that Plaintiff has not adequately alleged the personal involvement of either Perez or Many in any constitutional violation. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). However, Plaintiff merely alleges that Perez, as Superintendent of Downstate, "failed to respond to [his] letters," (Am. Compl. 5), which is insufficient to impute personal liability, *see Whitenack v. Armor Med.*, No. 13-CV-2071, 2014 WL 5502300, at *6 (E.D.N.Y. Oct. 30, 2014) (holding that the plaintiff "failed to plausibly plead [a defendant's] personal involvement in any infringement of [the plaintiff's] constitutional rights" where he merely alleged "[the defendant's] presumed receipt of grievances and his position atop the [correctional center]" (alterations and internal quotation marks omitted)). As for Many, the Amended Complaint only pleads that she was informed by Plaintiff's attorney that Plaintiff should be transferred to Willard and presumably made the arrangements. (*See* Am. Compl. 5–6.) That Many supervised Taedger, Plaintiff's counselor, (*see id.* at 5), cannot itself establish her personal involvement in any alleged wrongdoing, *see Vogelfang v. Capra*, 889 F. Supp. 2d 489, 502 (S.D.N.Y. 2012) ("To the extent [the plaintiff] may argue that [certain defendants] failed to properly supervise subordinates who were violating her rights, the mere fact that a defendant possesses supervisory authority is insufficient to demonstrate liability for failure to supervise under § 1983." (internal quotation marks omitted)).

13